UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
02 NOV 21 AM 11:48
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.  CASE NO. 6:02-cr-183-ORL-28DAB

TIFFANY BROOKE FOWLER

## PLEA AGREEMENT

A. **Particularized Terms**

Pursuant to Fed. R. Crim. P. 11(e), the United States of America, by Paul I. Perez, United States Attorney for the Middle District of Florida, and the defendant, Tiffany Brooke Fowler, and the attorney for the defendant, Stephen J. Langs, mutually agree as follows:

1. Counts Pleading To

The defendant shall enter pleas of guilty to Counts One and Two of the Information. Count One charges the defendant with conspiracy to commit the theft and transportation in interstate commerce of a thing of value of the United States, in violation of Title 18, United States Code, Section 371. Count Two charges the defendant with interstate transportation of stolen property, in violation of Title 18, United States Code, Sections 2314 and 2.

Defendant's Initials  TF

SCANNED

21

2. <u>Maximum Penalties</u>

Count One carries a maximum sentence of five years of imprisonment, a $250,000 fine, and a term of supervised release of up to three years. Count Two carries a maximum sentence of ten years of imprisonment, a $250,000 fine, and a term of supervised release of up to three years. In addition, each of Counts One and Two carries a special assessment of $50 per felony count for offenses committed prior to April 24, 1996, $100 per felony count thereafter; for organizations the amounts are "$200" and "$400" respectively, said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First</u>: That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the Information;

<u>Second</u>: That the defendant, knowing the unlawful purpose of the plan, willfully joined in it;

<u>Third</u>: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the methods or overt acts described in the Information; and

Defendant's Initials  TF                2

> Fourth: That such overt act was knowingly committed at or about the time alleged in an effort to carry out or accomplish some object of the conspiracy.

The elements of Count Two are:

> First: That the defendant transported or caused to be transported, in interstate commerce, items of stolen property as described in the Information;
>
> Second: That such items had a value of $5,000 or more; and
>
> Third: That the defendant acted willfully with knowledge that the property had been stolen.

4. <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of Indictment before a federal grand jury.

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution to the National Aeronautics and Space Administration.

7. <u>Acceptance of Responsibility</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will

Defendant's Initials __TF__     3

recommend to the Court that the defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8. <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to

Defendant's Initials TF           4

Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. <u>Use of Information - Section 1B1.8</u>

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10. <u>Cooperation - Responsibilities of Parties</u>

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full,

complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

Defendant's Initials _TF_    6

(3)   The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)   The government may use against the defendant its own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)   The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

B.   **Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters

Defendant's Initials TF                    7

a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(b)(4)(A), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's

Defendant's Initials ___   8

Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4. <u>Sentencing Guidelines and Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the sentencing guidelines, if any, applicable to defendant's case will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant understands that the Court is required to consider any applicable sentencing guidelines but may depart from these guidelines under some circumstances. Defendant acknowledges that defendant and defendant's attorney have discussed the sentencing guidelines and defendant understands how the guidelines are applicable to defendant's case. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding the potential application of the sentencing guidelines to defendant's case and any recommendations by the government are not binding on the United States Probation Office or the Court and that,

Defendant's Initials  TF                                 9

should any recommendations be rejected, and regardless of the guidelines calculated by the Probation Office or the Court, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Probation Office or the Court may make with regard to the defendant's sentencing guidelines or sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. <u>Appeal of Sentence; Waiver</u>

The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines. Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole. Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground, including the applicability of the "safety valve" provisions contained in 18 U.S.C. § 3553(f) and USSG §5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

In this case, the parties hereby agree to one additional exception to this appeal waiver to allow the defendant to appeal the Court's determination of the amount

Defendant's Initials _TF_    10


of the loss -- as dictated by the Court's determination of the value of the stolen lunar samples and Martian meteorites -- under USSG §2B1.1(b)(1). The defendant waives her right to appeal any other Sentencing Guidelines calculation issue.

6. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty

Defendant's Initials  TF                    11

or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

At all times pertinent to the Information and this Plea Agreement: (1) the National Aeronautics and Space Administration (NASA) was an agency of the United States government; (2) lunar samples obtained via various NASA Apollo Missions were the

Defendant's Initials _TR_    12

property of the United States government; (3) NASA's Johnson Space Center (NASA/JSC) in Houston, Texas, was designated as the depository for lunar samples owned by the United States government; and (4) NASA's lunar samples had a ~~fair market~~ value of between thousands of dollars per gram and hundreds of thousands of dollars per gram, depending upon, among other factors, the size, weight and quality of any particular sample. From an unknown date, but at least as early as May 9, 2002, through and including July 20, 2002, Tiffany Brooke Fowler and others came to a mutual understanding to try to steal lunar samples from NASA/JSC, sell them, and use the sale proceeds for their own enrichment.

On May 9, 2002, a coconspirator posted an advertisement, offering to sell lunar samples described as "Priceless Moon Rocks," on the web site of the Mineralogy Club of Antwerp, Belgium (Club). In addition, a coconspirator sent E-mail messages offering to sell lunar samples to various individuals, including a member of the Club, whom he believed might be interested in purchasing lunar samples.

The Club member reported the web site advertisement and E-mail message to the Federal Bureau of Investigation (FBI) in Tampa, Florida. At the direction of the FBI, the Club member responded to the advertisement via E-mail, expressing his/her interest in purchasing lunar samples, explaining that he/she could not travel to the United States for a meeting until September, and proposing that the coconspirator deal with the Club member's brother and sister-in-law in Pennsylvania, who were willing to act on the Club member's behalf, to effectuate the transaction.

On May 31, 2002, a coconspirator agreed to deal with the Club member's relatives. An undercover FBI agent (UCA) in Tampa, Florida, posed as the Club

Defendant's Initials TF            13

member's sister-in-law. Thereafter, all E-mails sent by the UCA to the coconspirator were sent from Tampa, Florida, and all E-mails sent to the UCA by the coconspirator were received in Tampa, Florida.

The coconspirator and the UCA corresponded via E-mail from June 4, 2002, through and including July 17, 2002, concerning a sale of lunar samples. Ultimately, such E-mail correspondence resulted in an agreement to meet on July 20, 2002, at 6:00 p.m., at Italianni's restaurant, 8148 International Drive, Orlando, Florida 32819, for the purpose of effectuating the sale of lunar samples.

On July 13, 2002, Tiffany Brooke Fowler and two coconspirators stole a 600-pound safe containing lunar samples from every Apollo mission that landed on the moon, documentation authenticating the lunar samples, Martian meteorites, and other items from NASA/JSC. The value of the stolen lunar samples, documentation authenticating such lunar samples, Martian meteorites, and other items stolen far exceeds $5,000.

On July 17, 2002, a coconspirator sent a 12-page facsimile from a Kinko's in Houston to the UCA. In the facsimile, the coconspirator advised the UCA that his "connection" stole an entire safe and that the safe contained lunar samples "spanning each of the Apollo missions[,]" and the coconspirator included in the facsimile copies of curatorial forms, the security container information card, and the matching identification sticker from the stolen safe to demonstrate to the UCA that the lunar samples were authentic. The coconspirator "stress[ed] that this is the **WORLD'S LARGEST** *private* Apollo rock collection, not to mention the **ONLY VERIFIABLE** Apollo rock collection."

Defendant's Initials __TF__                  14

Finally, the coconspirator set forth his "asking prices" and the UCA's "expected resell prices" based upon his research of "'legal' purchases of lunar meteorites."

On July 19, 2002, Tiffany Brooke Fowler and a coconspirator departed Texas for Orlando, Florida, in Fowler's vehicle. They transported the stolen lunar samples, documentation authenticating the lunar samples, Martian meteorites, and other items from Texas to Orlando for the purpose of selling all or part of the lunar samples to the Club member via the UCA.

Also on July 19, 2002, another coconspirator left Utah for Orlando, Florida, via America West Airlines. The coconspirator traveled to Orlando for the purpose of participating with Fowler and the other coconspirator, who drove from Texas to Orlando, in the anticipated sale of the stolen lunar samples on the following day.

On July 20, 2002, a coconspirator rented a hotel room, Room #905, at the Sheraton Studio City Hotel, 5905 International Drive, Orlando, Florida 32819. Once in Orlando, Fowler and the other coconspirator, who drove from Texas to Orlando, joined him in Room #905 of the Sheraton Hotel, where they housed the lunar samples, documentation authenticating the samples, Martian meteorites, and other items stolen from NASA/JSC.

Later on July 20, 2002, Tiffany Brooke Fowler and two coconspirators met the UCA and another undercover FBI agent, posing as the UCA's husband, at Italianni's restaurant, 8148 International Drive, Orlando, Florida 32819. They discussed the sale of lunar samples, and they agreed to drive to the Sheraton Hotel so that the UCAs could view the lunar samples, decide which samples to purchase, and take digital

photographs of the remaining samples. When they pulled into the Sheraton Hotel parking lot, other agents arrested Fowler and the two coconspirators.

Subsequently, Tiffany Brooke Fowler and a coconspirator arrested in Orlando admitted to the theft and interstate transportation of the lunar samples and other items. Both of them identified a fourth coconspirator, who had not traveled to Orlando, as the person who helped them steal the safe and its contents.

A search of Room #905 of the Sheraton Studio City Hotel revealed, among other things, a tackle box containing the stolen lunar samples, documentation authenticating the stolen samples, Martian meteorites, and a receipt for the hotel room in a coconspirator's name. An inventory search of Fowler's vehicle revealed, among other things, a hand-written version of a message sent via E-mail by a coconspirator who described himself as "fractalized in Florida," which linked that coconspirator to the E-mail sent to the Club member.

Later, agents in Houston, Texas, located the fourth coconspirator. That coconspirator also admitted to the theft of the safe and its contents, including the lunar samples. The coconspirator also took agents to her storage unit in Beaumont, Texas, consented to a search of the storage unit, and turned over a white trunk and a box, which contained materials taken from the stolen safe, located inside the storage unit.

10. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials TF    16

11. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this  24  day of  October , 2002.

PAUL I. PEREZ
United States Attorney

_____
Tiffany Brooke Fowler
Defendant

By: _____
Rachelle DesVaux Bedke
Assistant United States Attorney

_____ 10/25/2002
Stephen J. Langs
Attorney for Defendant

_____
Robert T. Monk
Assistant United States Attorney
Deputy Chief, General Crimes Section